FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

01 JAN 22 AM 10: 05

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JAN 22 2001

| | |
|---|---|
| **FREDERICK B. COATS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | CV-00-C-0287-W |
| **CHRIS VAUGHAN and the CITY of** ) | |
| **CUBA, ALABAMA,** ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OPINION DENYING DEFENDANT VAUGHAN'S
MOTION FOR SUMMARY JUDGMENT**

In this action under 42 U.S.C. § 1983, the Defendant Chris Vaughan seeks summary judgment on the Plaintiff's claims that while acting under color of state law, the said Defendant used unreasonable and excessive force. Based on the existence of genuinely disputed material facts, the motion must be denied.

I

On January 29, 1999, Plaintiff Frederick Coats and their his family were returning to their home in Cuba, Alabama when their car ceased to function in Meridian, Mississippi. On foot, Coats located an acquaintance, Maurice Glover at his home in Meridian. Glover agreed to drive Coats and his family home for a fee. and offered to pay him to take his family home. The Coats family entered the Glover's car and the trip commenced.

En route to Cuba via Interstate 20 East, Glover pulled to the shoulder of the roadway to

1

30

check a noise being made by the car. He disembarked from the car, while the Plaintiff and his family remained in the car. During this undertaking, a man in an unmarked sports utility van pulled up behind Glover's vehicle. The driver of the van was a deputy sheriff and constable, Bristow, who was off-duty and out of uniform. Bristow's identity was unknown to Coats and his family.

As Bristol approached Glover's car on foot, Glover jumped in the car and drove off. Bristol gave chase and pursued Glover into Alabama at a high rate of speed. During the chase, Bristol radioed the Defendant Chris Vaughan, the Chief of Police of Cuba, and enlisted his aid in apprehending Glover. In the meanwhile, Coats and his wife repeatedly entreated Glover to stop the car and let their family out, but to no avail.

When Glover's car reached Cuba, the Defendant Vaughan took up the chase. Glover eventually drove onto a dirt road which dead-ended in a swamp. Vaughan drove up behind Glover's car as Glover jumped out of the car and began running away from Vaughan's oncoming car. Coats, his wife and two children remained in the car.

Glover tripped near the bumper of his car. Vaughan then drew his service weapon and fired it thorough the rear windshield of Glover's car. The bullet flew over the heads of Coat's wife and children in the rear seat; but Coats was not so lucky. The bullet struck the Plaintiff in the rear of his head, just behind his left ear. It passed close to his ear canal, shattering bones in his jaw and partially lodging in his sinus cavity.

The Defendant Vaughan denies that he intentionally fired at Glover. He says that the gun discharged accidentally. But if the favorable inferences are made in a light most favorable to the Plaintiff,

that the person was a law enforcement official. As , Glover and the Coats family drove by a nightclub at the same time that Meridian police officer James Bristow passed them heading in the opposite direction. Officer Bristow noticed that one of the passengers in Glover's car had something in his hand, that the license tag on the car was not a standard tag, and that when he passed it, one of the passengers turned around and watched Officer Bristow drive by. Because the nightclub had been vandalized before, Officer Bristow turned around and decided to "check them out." (Bristow Depo., at p. 37.)

Soon thereafter, Glover pulled over on the side of the road to check a noise that his car was making.

Because there was a used car dealer tag on Glover's vehicle and because cars had been stolen from that dealer in the past, Officer Bristow decided to stop Glover. He pulled up behind Glover and began flashing police lights that he had installed in the grill of his personal vehicle and at his own expense. He was not in uniform, and he was not on duty.

Glover drove off when he noticed that Officer Bristow's vehicle had pulled up behind him.

Around this time, Defendant Chris Vaughan, sole police officer for the City of Cuba, Alabama, was notified that three suspects were fleeing a Mississippi law enforcement officer.

As Glover turned into a residential section of Cuba, Officer Bristow overshot the turn, and therefore Officer Vaughan ended up directly behind Glover's speeding car. Officer Vaughan continued the chase until Glover's vehicle became bogged in a flooded, swampy area and ran into a tree.

When Glover's vehicle stopped, he immediately got out and ran to the front of his car. Officer Vaughan recognized Glover and knew that he had a propensity for violence. When

3

Glover ducked behind the front of his car, Officer Vaughan thought that he was going to shoot, so Officer Vaughan drew his gun.

Officer Vaughan prepared to step out of his vehicle: He propped his left hand on the top of the door of the car, with his pistol drawn. As he stepped out of his vehicle, his left foot landed on a post submerged in the mud and water, causing him to stumble. Around the time he was stumbling, his gun went off, discharging a bullet through the rear window of Glover's vehicle and striking Plaintiff in the back of his head, behind his left ear. It shattered some of the bones in Plaintiff's jaw, and a portion of it lodged in his sinus cavity.

Upon examining Officer Vaughan's 9mm Luger semi-automatic pistol after the shooting, the Alabama Department of Forensic Sciences reported that there were only fourteen bullets in it. One of those shot Coats. Officer Vaughan loads his gun with a magazine containing sixteen bullets every morning.

## II. *Discussion*

Under the Fourth Amendment, a "seizure" occurs when there is "a governmental termination of freedom of movement through means *intentionally* applied." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis added)). In *Lewis*, a sheriff's deputy was in high-speed pursuit of a motorcyclist, crashed into the motorcycle, and killed the passenger, Lewis. 523 U.S. at 836-37. The Court found that the deputy did not *seize* Lewis within the scope of the Fourth Amendment because he *accidentally* crashed into the motorcycle: It was not "through means intentionally applied." *Id.* at 844.

An unintended person may be seized in violation of the Fourth Amendment as long as the

4

seizure itself was intentional. *See Brower*, 489 U.S. at 595-96 (citing *Hill v. California*, 401 U.S. 797, 802-05(1971)).

Plaintiff can defeat Defendants' summary judgment motion if he can show that there is a genuine issue of material fact as to whether Officer Vaughan shot accidentally—regardless of whether he was aiming at Glover or Coats.

The dispatcher notified Officer Vaughan that there were three suspects fleeing Officer Bristow. Officer Vaughan testified in his deposition that he knew Glover had a propensity for violence and that he believed there was going to be a shoot-out. He testified that he accidentally shot his gun when he fell; however, there were two bullets missing from his pistol.

There is a genuine issue of material fact as to whether Officer Vaughan fired his gun accidentally. Therefore, summary judgment will be DENIED, by separate order.

DONE this 19th day of January, 2001.

_____
Chief United States District Judge
U.W. Clemon